# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| James E. Robinson, | 2:16-cv-00902-JAD-PAL |
| Plaintiff | **Order Granting Summary Judgment** |
| v. | [ECF Nos. 53, 55, 58] |
| Dungarvin Nevada, LLC, | |
| Defendant | |

Pro se plaintiff James E. Robinson is a 66-year-old, disabled, African-American male who used to work as a program counselor for defendant Dungarvin Nevada, LLC.[1] He applied for a promotion on multiple occasions. But, each time, the position was awarded to a younger female.[2] When a personnel audit revealed that Robinson had a sex-related arrest in his background,[3] he told Dungarvin that the charges were dropped and he was released before arraignment. Dungarvin suspended Robinson for 30 days and told him to get documentation supporting his story,[4] but he was unable to acquire it and was fired.[5]

Robinson now sues his former employer for discrimination based on his race, age, disability, and genetic information; retaliation in violation of Title VII; and intentional infliction of emotional distress.[6] Both parties move for summary judgment in their favor,[7] and after a

[1] ECF No. 58-2.

[2] ECF Nos. 58-11; 58-13.

[3] ECF Nos. 58-7 at 11–12; 58-1 at 3, ¶ 10.

[4] ECF No. 58-8.

[5] ECF No. 58-10.

[6] ECF No. 5.

[7] ECF Nos. 53, 58.

complete review of the record, I grant summary judgment for the defendants on all of Robinson's claims.

## Discussion

### A.    Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[9]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[10]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[11]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[12]  The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[13]

---

[8] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[9] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[10] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[12] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[13] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

**B.      Dungarvin's challenges to Robinson's evidentiary offerings**

Dungarvin argues in its reply that Robinson's evidence is untimely and inadmissable because "much of the evidence was first provided to Defendant *after* the close of discovery and for the first time with Plaintiff's Opposition."[14]  Robinson's evidence, Dungarvin urges, is also "not authenticated, by affidavit or otherwise," and "no foundation is laid" for any of his exhibits, so his "[o]pposition remains entirely unsupported and relies solely on [Robinson]'s conclusory allegations and wild speculation."[15]

Discovery closed on August 7, 2017.[16]  Three days before that, Robinson had already filed his own motion for summary judgment with 53 pages of attached exhibits.[17]  Instead of responding directly to Robinson's motion, Dungarvin filed a summary-judgment motion of its own.[18]  In a 10-days-late response to that motion, Robinson attached 38 pages of exhibits—all of which were included in Robinson's own motion for summary judgment.[19]  So, that Dungarvin received "much of the evidence . . . for the first time with Plaintiff's Opposition" is just not true.

But I need not decide today whether Robinson's evidence is worthy of consideration because even if I take all of Robinson's exhibits into account, I find that no genuine issues of material fact exist to preclude me from granting summary judgment in Dungarvin's favor on all claims.

**C.      Evaluating Robinson's claims**

Robinson alleges seven claims for relief stemming from his denied promotion applications and termination.  He alleges that Dungarvin discriminated against him based on his

---

[14] ECF No. 65 at 3 (emphasis in original).

[15] *Id.*

[16] ECF No. 45.

[17] ECF No. 53.

[18] ECF No. 58.

[19] ECF No. 64.

(1) race in violation of Title VII; (2) age in violation of the Age Discrimination in Employment Act (ADEA); (3) disability in violation of the Americans with Disabilities Act (ADA); and (4) genetic information in violation of the Genetic Information Nondiscrimination Act (GINA) when it declined to promote him to Program Coordinator.[20]  Robinson also claims that his former employer (5) unlawfully discharged him; (6) terminated him in retaliation for filing a workplace-discrimination grievance;[21] and (7) intentionally inflicted emotional distress on him.[22]  He "seeks an exemplary Award, in the amount of $13 Million, as per the givens [sic] afforded, within FCSP [sic] Rule 55."[23]  I now evaluate each of Robinson's claims and find that they all lack merit.

### 1. First claim for relief: racial discrimination in violation of Title VII

In the pathmaking case of *McDonnell Douglas Corporation v. Green*,[24] the United States Supreme Court established a burden-shifting framework for courts to apply to Title VII-discrimination claims.[25]  "A discrimination complainant must first establish a prima facie case of disparate treatment."[26]  "In general, a plaintiff must present evidence of 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or another impermissible criterion.'"[27]  If the plaintiff presents a prima facie case, "the burden shifts to the defendant to produce some evidence

---

[20] ECF No. 5 at 3.

[21] Robinson's grievance alleges that he was discriminated against based on his sex—a Title VII-protected class of discrimination—so I construe his retaliation claim as one brought under Title VII.

[22] *Id.*

[23] ECF No. 64 at 2.

[24] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[25] *Id.* at 802.

[26] *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (internal citations and quotations omitted).

[27] *Id.* (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)).

demonstrating a legitimate, nondiscriminatory reason for the employee's termination."[28]  And if the defendant meets that burden, "any presumption that the defendant discriminated 'drops from the case,' and the plaintiff must then show that the defendant's alleged reason for termination was merely a pretext for discrimination."[29]

To present a prima facie case of racial discrimination in the failure-to-promote context, Robinson must provide evidence to show that: (1) he is a member of a protected class; (2) he applied for and was qualified for an open job; (3) he was rejected for that job; and (4) Dungarvin filled the position with someone from outside of his protected class.[30]  The first three elements are not in dispute: Robinson is an African-American male who was objectively qualified—but rejected—for the Program Coordinator position.  Robinson fails, however, to present a prima facie case because he is unable to show that someone outside of his race filled the position.

In fact, Robinson never once describes the selected candidates' races throughout this litigation.  In his amended complaint, Robinson alleges that the positions were given to women who were approximately 40 years old.[31]  In his motion for summary judgment, Robinson states that the "positions were afforded to women, whom [he] believe[s] were 40 years old, or younger."[32]  And in his opposition to Dungarvin's motion for summary judgment, Robinson reinforces that all of the "supervisory positions were afforded to women, less than forty years of age."[33]  Not a single one of Robinson's exhibits mentions these candidates' races, and the only

---

[28] *Id.*

[29] *Id.*

[30] *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

[31] ECF No. 5 at 4.

[32] ECF No. 53 at 9.

[33] ECF No. 64 at 4.  Robinson includes the fact that all of the selected candidates were female, and he even filed an employee grievance alleging that a program director "did conspire to hinder [his] upward mobility in the Dungarvin workplace, based on [his] sex."  ECF No. 64 at 24.  But Robinson does not allege a sex-discrimination claim in his amended complaint, and he

allusion to their race at all is an unsupported statement in Dungarvin's summary-judgment motion that one of the women was a 27-year-old African American and another one was also African American but 45 years old.[34]

So, Robinson fails to provide any evidence at all that would allow a reasonable jury to conclude that non-African American candidates were selected for the positions for which he was denied. I therefore grant summary judgment in Dungarvin's favor on this racial-discrimination claim.

### 2. Second claim for relief: age discrimination in violation of the ADEA

The *McDonnell Douglas* burden-shifting framework also applies to age-discrimination cases.[35] The prima facie case for an age-discrimination claim in the failure-to-promote context essentially mirrors that of a claim for racial discrimination. Robinson must show that he was "(1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person."[36] None of these elements are in dispute. Robinson was 65 years old when he applied for the promotions, he was objectively qualified for them, he was denied, and the chosen candidates were at least 20 years younger than him.

But Dungarvin provides legitimate reasons for declining to promote Robinson, and Robinson provides no evidence that those reasons were pretextual. Robinson mentions multiple

---

apparently declined the opportunity to amend his complaint a second time. *See* ECF No. 25 (advising Robinson that he could file a motion for leave to amend his first-amended complaint); *see generally* docket report 2:16-cv-00902-JAD-PAL (showing that Robinson did not file a motion for leave to amend his first-amended complaint).

[34] ECF No. 58 at 14.

[35] *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004).

[36] *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

times that he applied for a promotion on four separate occasions.[37] But the only evidence in the record of these applications comes from Dungarvin, and it confirms two applications at most.[38]

Robinson's first application was for a "program coordinator" position. Program coordinators are responsible for coordinating a wide range of tasks:

> including, but not limited to: staff schedules, finances of persons served, community integration, recreation, program services, family involvement, education/vocational programs, health care/nutrition, and household management, as well as assist[ing] the program director in maintaining consistency in programming, care of persons served, and communication with staff and interdisciplinary team members.[39]

Robinson "appeared for the interview over thirty minutes late" and, "[b]ecause the position . . . was responsible for creating and maintaining schedules for staff and persons served," "he was disqualified from that round of hiring as punctuality and reliability are essential criteria for the position."[40] And when Robinson applied a second time, "Program Director Diana Danescue was unable to get in touch with Mr. Robinson to schedule an interview as he did not return her attempts to get in touch with him," and he "was not interviewed for the Program Coordinator position . . . ."[41] Both of these reasons not to promote Robinson are legitimate and nondiscriminatory, and Robinson presents absolutely no evidence to show that they are merely pretext for age discrimination. So, I grant summary judgment in Dungarvin's favor on this age-discrimination claim.

### 3. Third claim for relief: disability discrimination in violation of the ADA

Robinson's next claim is for disability discrimination in violation of the ADA. To

---

[37] ECF Nos. 5 at 4 (amended complaint); 53 at 11 (Robinson's motion for summary judgment); 64 at 4 (Robinson's response to Dungarvin's motion for summary judgment).

[38] *See* ECF Nos. 58-11 (Robinson's applications); 58-1 at 3, ¶¶ 11–12 (Dungarvin regional director affidavit).

[39] ECF No. 58-14.

[40] ECF No. 58-1 at 3, ¶ 11.

[41] *Id.* at ¶ 12.

present a prima facie case of disability discrimination under the ADA, Robinson must show that he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability."[42]  It appears, however, that Robinson has disavowed any facts to support this disability-discrimination claim.

Dungarvin deposed Robinson and asked if he believed that Dungarvin discriminated against him based on his disabilities.[43]  Robinson responded: "I believe they discriminated against me because I'm black.  If that's a disability, yeah."[44]  Dungarvin then asked Robinson: "So you do not believe that Dungarvin discriminated against you because of your disability?"[45]  Robinson responded: "No.  But I am saying that I am disabled."[46]  And Robinson denies ever claiming that Dungarvin discriminated against him based on his type-II diabetes and knee-related injury.[47]  If Robinson once believed that Dungarvin discriminated against him based on his disabilities, he no longer does, and he has offered no evidence to maintain this claim. Accordingly, I grant summary judgment for Dungarvin on Robinson's disability-discrimination claim.

### 4. *Fourth claim for relief: genetic-information discrimination in violation of GINA*

Robinson alleges in his fourth claim for relief that Dungarvin discriminated against him based on his genetic information in violation of GINA.  GINA provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation,

---

[42] *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

[43] ECF No. 58-9 at 22.

[44] *Id.*

[45] *Id.* at 22–23.

[46] *Id.* at 23.

[47] *Id.* at 22.

terms, conditions, or privileges of employment . . . because of genetic information with respect to the employee."[48]  "Genetic information" is "information about [the employee's] genetic tests, the genetic tests of family members of [the employee], and the manifestation of a disease or disorder in family members of [the employee]."[49]

Robinson alleges no facts and provides no evidence that he was discriminated against based on his or his family's genetic tests or diseases that run in his family.  Dungarvin asked Robinson at his deposition if he believed that it discriminated against him based on his genetic information.[50]  Robinson replied: "Genetic, being black? . . . Yeah, I think that."[51]  Race is protected under Title VII, not under GINA.  So because Robinson's sole basis for his genetic-information-discrimination claim is his race, the claim lacks merit.  I therefore grant summary judgment in Dungarvin's favor on this claim, too.

### 5. *Fifth and sixth claims for relief: tortious discharge from employment and retaliation in violation of Title VII*

I address these next two claims simultaneously because Robinson alleges the same basis—that he was terminated for filing an internal grievance of sex discrimination—for both.[52] Nevada does "not recognize a claim for tortious discharge when an adequate statutory remedy already exists."[53]  Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

---

[48] 42 U.S.C.A. § 2000ff-1(a)(1) (2017).

[49] 42 U.S.C.A. § 2000ff (4)(A) (2017).

[50] ECF No. 58-9 at 23.

[51] *Id.*

[52] *See* ECF Nos. 5 at 4, ¶ 8 (retaliation); 64 at 5 ("Once this Plaintiff filed the Discrimination Grievance and the Dungarvin Management did not respond, but suppressed the Discrimination Grievance, they became insecure and sought to terminate this Plaintiffs [sic] employment, with Dungarvin.").

[53] *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (citing *D'Angelo v. Gardner*, 819 P.2d 206, 217 (Nev. 1991)).

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[54]  Title VII also makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter."[55]

Robinson's grievance alleges that the program director "did conspire to hinder [his] upward mobility in the Dungarvin workplace, based on [his] sex."[56]  Robinson's grievance thus complained of what he believed to be an unlawful employment practice under Title VII.  Because Title VII provides an adequate statutory remedy for Robinson's claim, his tortious-discharge claim is invalid.  I therefore grant summary judgment in Dungarvin's favor on Robinson's tortious-discharge claim.

"To make out a prima facie case of [Title VII] retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."[57]

The parties dispute whether Robinson submitted his grievance to Dungarvin at all. Dungarvin argues that Robinson "never presented his grievance to Defendant Dungarvin"[58] who purportedly has "excellent records[-]keeping protocols, and if a grievance was submitted to his supervisor, whether in writing, in person, or via email, Dungarvin would have a record of such grievance.[59]  Dungarvin then argues that "[t]he only grievance Plaintiff produced during the

---

[54] 42 U.S.C. § 2000e-2(a)(1) (2012).

[55] 42 U.S.C. § 2000e-3(a) (2012).

[56] ECF No. 58-13 at 2.

[57] *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).

[58] ECF No. 58 at 16.

[59] *Id.* at 9.

pendency of this litigation was sent only to his wife, Rosalind Robinson."[60]  But the exhibit does not show that the grievance was sent *only* to Mrs. Robinson.  Instead, the exhibit shows that the grievance was originally written and sent to some unknown recipient on August 26, 2015, and on November 30, 2015, Robinson forwarded a copy of the grievance to his wife.[61]  There's no evidence of the original grievance, but Robinson claims that he filed it on an internal network.[62]

Even if I assume for the sake of argument that Robinson did file a sex-discrimination grievance with Dungarvin, he fails to present a prima facie case of retaliation because he doesn't show a causal link between the grievance and his termination.  An involuntary-termination-action form in the record indicates that Robinson was terminated because he didn't clarify his background check during his 30-day suspension.[63]  It also indicates that Robinson was eligible and recommended for rehire if he could "pass the background check."[64]  Robinson does not refute this exhibit in his opposition, and he fails to otherwise show with anything more than speculation that he was terminated because of his grievance.  So, I grant summary judgment for Dungarvin on Robinson's Title VII retaliation claim.

### 7.  *Seventh claim for relief: intentional infliction of emotional distress*

Lastly, Robinson claims that Dungarvin intentionally caused him emotional distress.[65] "[T]he elements of this cause of action are (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."[66]  Conduct

---

[60] ECF No. 58 at 16.

[61] ECF No. 58-13.

[62] ECF No. 64 at 4–5.

[63] ECF No. 58-10.

[64] *Id.* at 2.

[65] ECF No. 5 at 3.

[66] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).

is extreme and outrageous if it is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[67]

Robinson fails to allege—let alone show—that Dungarvin engaged in extreme and outrageous conduct. Dungarvin performed a personnel audit and discovered that Robinson had been arrested in the past for various sex crimes.[68] No disposition was recorded for those crimes on the background check, so Dungarvin gave Robinson 30 days to get disposition paperwork.[69] Because Robinson's arrest had occurred nearly four decades prior, he was unable to get disposition paperwork from the courthouse, and he consciously decided not to take additional steps to have his background check corrected.[70] Fearing that its operating license was in jeopardy due to Robinson's ambiguous, sex-crime-related-arrest history,[71] Dungarvin terminated Robinson's employment but recommended him for rehire if he later passed the background check.[72] Based on the evidence, there is not even a whiff of conduct that is extreme and outrageous here. I therefore grant summary judgment for Dungarvin on this claim, too.

---

[67] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

[68] ECF No. 58-7 at 11–12.

[69] ECF No. 58-8.

[70] ECF No. 58-9 at 19–21.

[71] Under NRS § 449.174, the Division of Public and Behavioral Health of the Department of Health and Human Services "may deny a license to operate a facility, hospital, agency, program or home to an applicant or may suspend or revoke the license of a licensee to operate such a facility, hospital, agency, program or home if the licensee has, in violation of NRS 449.125, continued to employ a person who has been convicted of [sexual assault, statutory sexual seduction, incest, lewdness or indecent exposure, or any other sexually related crime that is punished as a felony]." NEV. REV. STAT. § 449.174(1)(b) (2017). This statute became effective July 1, 2011, as NRS 449.188, but it was substituted in revision with NRS 449.174. NEV. REV. STAT. § 449.188.

[72] ECF No. 58-10.

### Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment **[ECF No. 58] is GRANTED.**

IT IS FURTHER ORDERED that Robinson's motions for summary judgment **[ECF No. 53] and** to correct his summary-judgment motion **[ECF No. 55] are DENIED as moot in light of this order.**

The **Clerk of Court** is directed to **ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

DATED: January 24, 2018.

_____
U.S. District Judge Jennifer A. Dorsey